```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


PARATEK MICROWAVE, INC.        :
                               :
v.                             :   Civil No. WMN-04-2534
                               :
AGILE MATERIALS                :
& TECHNOLOGIES, INC.           :
```

### MEMORANDUM

Before the Court is the motion to dismiss for lack of personal jurisdiction and improper venue by Defendant Agile Materials and Technologies, Inc.  Paper No. 20.  As an alternative to dismissal, Defendant seeks transfer under 28 U.S.C. § 1404(a).  Plaintiff Paratek Microwave, Inc. has opposed the motion and Defendant has replied.  Plaintiff also moves for leave to conduct limited discovery on the question of jurisdiction in the event the Court finds it lacks personal jurisdiction over Defendant based upon the current pleadings. Paper No. 30.  Upon a review of the motions and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion to dismiss for lack of personal jurisdiction will be denied and the motion to transfer will be granted.  Plaintiff's discovery motion will be denied.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a California resident, designs and makes tunable integrated components, which relate to wireless communications technology.  Plaintiff, a Maryland resident, filed suit in this Court on August 2, 2004, claiming that Defendant has infringed on four of its patents by manufacturing, using, selling, and attempting to sell some of Defendant's products.  Plaintiff alleges that Defendant uses, sells, and offers for sale the disputed products in Maryland.  Defendant filed its motion to dismiss, pursuant to Rule 12(b)(2), on the grounds that it is not subject to personal jurisdiction in Maryland.  In the alternative, Defendant seeks a transfer to the Central District of California, where it is located.  Plaintiff asserts that jurisdiction exists and venue is appropriate here based largely on two Small Business Innovation Research (SBIR) grants that Defendant received from the Department of Defense and under which it deals with the Army Research Laboratory (ARL), a federal entity located in Adelphi, Maryland.

## II. DISCUSSION

While a court typically decides the question of personal jurisdiction over the defendant before considering venue, the Supreme Court holds that "when there is a sound prudential justification for doing so, . . . a court may reverse the

normal order of considering personal jurisdiction and venue." Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979). Because of the insufficient and ambiguous record of what Defendant is specifically alleged to have done in Maryland, as well as the possible applicability of the government contacts exception to a potential finding of personal jurisdiction over Defendant, this Court will consider venue first.

### A. Venue

By Congressional statute, this Court may transfer a civil action over which it has jurisdiction "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The statute gives district courts discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). "In a motion pursuant to § 1404(a), the burden is on the moving party to show that transfer to another forum is proper." Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

Assuming, as argued by Plaintiff, that Maryland has personal jurisdiction over Defendant, this Court determines the propriety of venue by considering the following factors:

"(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." Id.

The parties dispute the proper level of deference this Court should show to Plaintiff's forum selection. Plaintiff cites case law calling for "paramount consideration," while Defendant cites cases calling for considerably less deference. The discrepancy is not surprising. See Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 3848 (1986) (noting courts' "bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum" when considering transfer motions).

Here, Plaintiff is a Maryland resident but because of the special status of the federal government and the lack of detail in the complaint, whether any of the allegedly infringing activity occurred in Maryland still appears to be validly disputed. See Dicken v. United States, 862 F. Supp. 91, 92 -93 (D. Md. 1994) (giving Maryland plaintiff's choice of Maryland forum "little weight when none of the conduct complained of occurred in the forum . . . [and] forum has no connection with the matter in controversy"). At the same time, a critical portion of the allegedly infringing activities necessarily occurred in California where Defendant

4

manufactures the products at issue. Considering these facts, the Court therefore gives some deference to Plaintiff's forum choice but does not afford it the paramount consideration it requests.

The parties also dispute the relative access and convenience of witnesses as well as the proper weight the Court should attach to this factor. A leading treatise makes clear that witness convenience is probably the "most important factor" in the transfer decision, but that it is still weighed against other factors. Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 3851 (1986) (distinguishing convenience of witnesses from convenience of parties (Section 3849)). Additionally, courts focus on the location of key witnesses, which the party seeking transfer must identify, rather than balancing the total number of each party's prospective witnesses. Id.

Defendant has made a more substantial showing that the key third-party witnesses are concentrated in California. By affidavit, Defendant's Chief Technology Officer, Dr. Robert York, testifies that three of the four third-parties who were "most directly involved in the engineering, research and development of the technologies employed by the accused products" live in California. In its Reply, Defendant further

5

identifies the three as Amit Nagra, James Speck, and Baki Acikel, and affirmatively states that they are likely to be called as witnesses at trial and unlikely to travel to Maryland.  Plaintiff's only specifically identified third-party witness is its own counsel, James Finn, whom Plaintiff does not claim would be either unable  or significantly burdened by providing testimony in California.  Plaintiff also notes that seven of eight inventors of the disputed patents reside in Maryland without asserting that they are third-parties or that they are expected to testify at trial. Finally, Plaintiff asserts that ARL employees, as well as CECOM employees in New Jersey, might also be witnesses as to Defendant's activities, but only does so in vague and conclusory language.  Convenience of witnesses therefore appears to favor transfer.  See Laitram Corp. v. Hewlett-Packard Co., 120 F. Supp. 2d 607, 610 (E.D. La. 2000) (transferring patent infringement case to Oregon from plaintiff's home forum, in part, to ensure live testimony of defendant's former employees).

Convenience of the parties also appears to favor Defendant.  Defendant has declared through the affidavits of its CEO and Chief Technology Officer that it only has thirteen employees and asserts that the loss of any of these employees

6

for participation in a Maryland trial could pose significant harm to Defendant's business.  Defendant further declares that all of its documents and records related to the development and marketing of the disputed products are in California.  See GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (stating general rule of patent infringement actions that "preferred forum is that which is the center of the accused activity" because "trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production") (internal quotations omitted).  Plaintiff, who has a business presence in California, correctly notes that transfer cannot be exercised merely to shift inconvenience from one party to the other but does not assert that trial in California would cause any particular hardship to it or its employees.  Nothing else in the record indicates that Plaintiff would be particularly burdened by attending trial in California.

Finally, the interests of justice also favor transfer to California.  While Maryland naturally has an interest in the rights of its resident Plaintiff, for the reasons stated above, there is no indication that Plaintiff's access to justice will be impaired by transfer of its patent claim to the Central District of California.  Justice, however, does

7

favor transfer that will facilitate the highly technical live testimony of key third-party witnesses.  See Laitram Corp. v. Hewlett-Packard Co., 120 F. Supp. 2d 607, 610 (E.D. La. 2000) (considering such testimony "essential to the cause of justice itself").  Because personal jurisdiction over Defendant has not been established yet in Maryland, the interests of justice also favor transfer that insulates any award Plaintiff might ultimately win here from being lost on a successful appeal challenging this Court's personal jurisdiction over Defendant. See First Advisory, LLC v. American Water Star, Inc., 2004 WL 2538388, *4  (D. Md. Nov. 9, 2004) (transferring Maryland plaintiff's action and noting "victory subject to being set aside for lack of jurisdiction would be of little value").

Full consideration of the relevant transfer factors therefore favors transfer to the Central District of California.

B.  Personal Jurisdiction

To achieve national uniformity in the field of patent law and promote judicial efficiency, federal courts apply Federal Circuit law when deciding the constitutionality of the exercise of specific personal jurisdiction in patent disputes. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994) (stating that Federal Circuit

8

"owe[s] no special deference to regional circuit law").

This Court's exercise of personal jurisdiction over non-resident defendants in a patent infringement case must comport with Maryland law and the Due Process Clause of the Fifth Amendment. See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1349-51 (Fed. Cir. 2002).  The Maryland Court of Appeals "has consistently stated that the intent of the legislature in enacting Maryland's long arm statute was to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the Federal Constitution." Camelback Ski Corp. v. Behning, 513 A.2d 874, 876 (Md. 1986) (citing numerous cases), vacated and remanded on other grounds, 480 U.S. 901 (1987), opinion on remand, 539 A.2d 1107 (1988); but see Joseph M. Coleman & Associates, Ltd. v. Colonial Metals, 887 F. Supp. 116, 119 n.2 (D. Md. 1995) (expressing discomfort with the merger of statutory and constitutional inquiries because they are merely interrelated).  The Federal Circuit directs that once the forum's long-arm statute is satisfied, the court determines if due process requirements are met by assessing "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates

to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194, 1202 (Fed. Cir. 2003).

A non-resident corporate defendant is subject to general jurisdiction where it maintains "continuous and systematic general business contacts" with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). "Typically, courts assert general jurisdiction only over nonresidents who are essentially domiciled within the forum state." Corry v. CFM Majestic Inc., 16 F. Supp. 2d 660, 663 (E.D. Va. 1998) (noting that the minimum benchmark is typically an office in the forum state) (citations omitted). The Fourth Circuit emphasizes that "broad constructions of general jurisdiction should be generally disfavored." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993).

The facts of this case show that Defendant clearly has not established the type of presence required for Maryland to assert general jurisdiction. Defendant's presence in Maryland is minimal. It manufactures the allegedly infringing product at its sole plant, located in California. It has no Maryland offices or assets and does not maintain any employees or agents within the state. Its only alleged contacts with

10

Maryland are its two government grants, both related to a single project, and a speech given in College Park, Maryland, by one of its officers, Dr. York, who presented it in his capacity as a professor at the University of California at Santa Barbara.[1]  Plaintiff speculates that because Defendant's grants total $1,100,000, Defendant must have other undisclosed Maryland contacts related to its dealing with the ARL and other current or potential customers.  Plaintiff, however, has offered nothing to support its speculation about these additional Maryland contacts.

Whether Defendant is subject to personal jurisdiction hinges largely on whether its relationship with the ARL falls within the government contacts exception to the general rules of personal jurisdiction.  The Federal Circuit summarizes the doctrine with the proposition, "petitioning the national government does not 'count' as a jurisdictional contact in the personal jurisdiction analysis."  Zeneca Ltd. v. Mylan

---

[1]  Plaintiff asserts that, notwithstanding his position as a professor, Dr. York converted the speech into Defendant's business activity when he mentioned that Defendant develops and sells the technology at issue in response to an audience question.  Even if true, this contact with Maryland is too random and fortuitous to serve as a basis for personal jurisdiction over Defendant in Maryland.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (stating "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts").

11

Pharmaceuticals, Inc., 173 F.3d 829, 831 (Fed. Cir. 1999). The exception was judicially created by the courts of the District of Columbia in the 1930s and 40s and essentially held that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 813 (D.C. 1976) (en banc); see Mueller Brass Co. v. Alexander Milburn Co., 152 F.2d 142 (D.C. Cir. 1946), for early articulation of the doctrine.  The exception is no longer limited to the District of Columbia and applies also to federal agencies located in Maryland.  Zeneca at 832 (applying exception in patent infringement case where West Virginia Defendant had applied to FDA, located in Maryland, for permission to market generic version of patented drug).

From the pleadings before the Court, it is not clear whether Defendant's relationship with the ARL falls within the exception.[2]  Courts applying the doctrine have diverged when

---

[2] Plaintiff argues that transfer is improper prior to discovery, because at this point it only needs to make a prima facie showing that Defendant is subject to personal jurisdiction in Maryland to withstand the transfer motion. See Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003).  The rule enunciated in Silent Drive and companion cases protects a plaintiff who has not yet been able to conduct discovery from having its action dismissed, and possibly being denied adjudication on the

12

stating its scope.  Compare Rose v. Silver, 394 A.2d 1368, 1374 (D.C. 1978) (stating that First Amendment "provides the only principled basis" for doctrine and limiting the exception to petitioning the government) with Naartex Consulting Corp. v. Watt, 722 F.2d 779, 786 (D.C. Cir. 1983) (questioning Rose explicitly and stating its understanding that "personal jurisdiction could not be founded upon any kind of 'government contacts,' i.e., 'getting information from or giving information to the government, or getting the government's permission to do something'").

The lack of clarity stems from the incomplete picture of what, if anything, Defendant has done in Maryland.  It is not disputed that Defendant has government grants from ARL dating from 2001 and that ARL is a federal entity located in Adelphi, Maryland.  Defendant argues that the exception applies because the two grants were obtained through a federal government website that gave Defendant no indication of which of several possible ARLs located across the nation would facilitate the grant.  It also argues that a grant recipient falls within the

---

merits.  It does not follow, however, that a plaintiff need
only make a prima facie showing of jurisdiction to withstand a
motion to transfer, when the transferring court fully
considers the relevant transfer factors, because even where
the transfer motion is granted the plaintiff's access to the
courts is preserved.

exception where, as here, it does not engage in sales to the government.  Case law, again, allows for differing conclusions.  Compare Siam Kraft Paper Co., Ltd. v. Parsons & Whittemore, Inc., 400 F. Supp. 810, 812 (D. D.C. 1975) (finding grant recipient's activities to be "well within the traditional 'government contacts' principle" where it did not engage in sales to the government) with United States v. Wilfred American Educ. Corp., 1987 WL 10501, *4 (D. D.C. 1987) (stating "categorical governmental contacts rule, though not explicitly overruled, has not survived" and finding exception inapplicable to defendant accused of fraudulently obtaining federal student grants and loans).  More to the point, beyond the speech by Dr. York, Plaintiff has not alleged with specificity any actions, either infringing or non-infringing, that Defendant has performed in Maryland pursuant to these grants.

   Where, as here, the factors that can be determined on the pleadings strongly support transfer, the Court can transfer the action to any District where venue is proper without coming to a final ironclad resolution of the personal jurisdiction question. Alternatively, under Sections 1404(a)[3]

---

[3]  The statute reads:
   (a) For the convenience of parties and witnesses, in the interest of justice, a district

14

or 1406(a)[4] of Title 28, a district court can transfer a case regardless of whether it has jurisdiction over the Defendant, if the interests of justice support transfer over dismissal. Therefore, for the reasons stated in this Memorandum, this action will be transferred to the Central District of California.  A separate order consistent with the reasoning of this memorandum will follow.

                                           /s/
                                  William M. Nickerson
                                  Senior United States District Judge

Dated: June 7, 2005

---

    court may transfer any civil action to any other district or division where it might have been brought.
28 U.S.C. § 1404(a)

[4]  The statute reads:
    (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
28 U.S.C. § 1406(a)